1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11  WALTER R. O'NEAL,                    )      NO. EDCV 04-01007-MAN
                                         )
12                    Plaintiff,         )
                                         )      MEMORANDUM OPINION
13           v.                          )
                                         )      AND ORDER
14  JO ANNE B. BARNHART,                 )
    Commissioner of the                  )
15  Social Security Administration,      )
                                         )
16                    Defendant.         )
    _____ )

17

18       Plaintiff filed a Complaint on August 12, 2004, seeking review of

19  the decision of the Defendant Social Security Commissioner

20  ("Commissioner") denying Plaintiff's claim for disability insurance

21  benefits ("DIB").  42 U.S.C. § 405(g).  On September 2, 2004, the

22  parties filed a "Consent to Proceed Before a United States Magistrate

23  Judge," pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint

24  Stipulation on May 3, 2005, in which:  Plaintiff seeks an order

25  reversing the Commissioner's decision and remanding the case to the

26  Commissioner for further proceedings; and Defendant requests that the

27  Commissioner's decision be affirmed.  The Court has taken the parties'

28  Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on May 20, 2002. (Administrative Record ("A.R.") 74-76.) Plaintiff claims to have been disabled since October 2, 2001, due to back injury, sciatica pain, chronic anxiety, foot problems, and frequent headaches. (A.R. 14, 74.) He has past relevant work experience as a maintenance supervisor, maintenance repairer, painter, groundskeeper, maintenance repairer/groundskeeper/painter, golf cart mechanic, back hoe operator, window washer/maintenance repairer, and stocker. (A.R. 27, 90.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On September 16, 2003, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge David Wurzel ("ALJ"). (A.R. 276-331.) The record was held open after the hearing to permit Plaintiff's counsel to obtain a functional assessment from Plaintiff's treating osteopathic physician, which was submitted. (A.R. 13.) On March 25, 2004, in a 20-page written decision, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 6-8, 13-32.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his March 25, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability of October 2, 2001. (A.R. 29.) The ALJ found that Plaintiff:  is "a younger individual"; has a high school

education; and is literate and able to communicate in English. (A.R. 30-31.) The ALJ determined that Plaintiff has "severe" physical impairments, consisting of "[s]tatus post left lumbar hemilaminectomy in 1984; mild-to-moderate degenerative disc and joint disease, lumbosacral spine, per MRI in October 2001; sciatica, left lower extremity; hypertension controlled on medication without end-organ damage; hypothyroidism controlled on medication; obesity (75 inches tall, 271 pounds, BMI 34); mood disorder: history of panic disorder with mild agoraphobia; and chronic alcohol abuse." (A.R. 30.) The ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulation No. 4. (*Id.*) In addition, the ALJ found that Plaintiff's testimony regarding his impairments was not fully credible. (*Id.*)

The ALJ found that Plaintiff has the following residual functional capacity at the "light level" with various physical and mental limitations. (A.R. 30.) The ALJ further found that Plaintiff cannot perform his past relevant work and has no transferable skills. (A.R. 30-31.) Using Medical-Vocational Guideline Rule 202.21 as a framework and relying upon the testimony provided by the vocational expert, the ALJ found that Plaintiff could perform a significant number of other jobs in the national economy, such as the jobs of "hand packager" and "assembler, small products."[1] (A.R. 31.)

---

[1]     Under Rule 202.21, a person who is a "younger" individual, a "high school graduate," "skilled or semi-skilled," but with no "transferable" skills, is not disabled.

As an alternative ground for his decision, the ALJ determined that even if, in addition to the above-noted limitations, Plaintiff were further limited to "the sedentary exertional level, with no jobs requiring pushing, pulling or operating machinery with either lower extremity, and no more than average stress," Plaintiff still could perform a significant number of jobs in the national economy, such as the jobs of "assembler, small products" and "assembler, electric accessories." (A.R. 31.)

Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (A.R. 31)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary

4

<u>of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id.* at 1041; *see also* <u>Batson v. Commissioner of the Social Security Administration</u>, 359 F.3d 1190, 1198 (9th Cir. 2004)("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two issues.  <u>First</u>, Plaintiff contends that the ALJ improperly disregarded the opinions of his treating physician, Dr. Kelly McKerahan, an osteopath, and failed to incorporate fully into his residual functional capacity finding the mental limitations set forth by Dr. Harold Konia, a psychiatrist who examined Plaintiff at the request of the Commissioner, and Dr. Gina Rivera-Miya, a state agency physician. <u>Second</u>, Plaintiff contends that the ALJ improperly found that Plaintiff was not credible with respect to his claimed limitations, and the ALJ failed to assess properly the written statement provided by Linda O'Neal, Plaintiff's wife.  (Joint Stip. at 3.)

*///*

*///*

*///*

5

**A.**    **The ALJ Properly Considered The Opinion Of Plaintiff's Treating Physician And The Mental Limitations Found By Other Physicians.**

Ordinarily, the opinions of a treating physician should be given great, if not controlling, weight. *See* Social Security Ruling 96-2p. When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating physicians' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled). Broad and vague reasons will not suffice for rejecting the treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

Here, the ALJ discussed the physical and mental residual functional capacity assessments provided by Dr. McKerahan, Plaintiff's treating osteopath, as follows:

[In a September 22, 2003 Physical Capacities Evaluation and Mental Residual Functional Capacity Assessment, A.R. 268-72], Dr. McKerahan opines that [Plaintiff] cannot even do sedentary work, being limited to sitting, standing, and walking for a total of one hour each in an eight-hour day, and is incapable of any postural activities at all, including reaching. He also opines that [Plaintiff] has moderate deficits in nearly all areas of mental functioning. This

assessment is plainly ridiculous on the record of this case, and I give it little weight.

Although Dr. McKerahan is a treating physician, his opinions are not entitled to controlling weight, because they are inconsistent with other well-supported opinions of record, including the opinions of the examining examiner, Dr. Schweller (Exhibit 9F), who is board-certified in neurology and whose report of examination is far more thorough than any ever reported by Dr. McKerahan, who is not board-certified in anything.  Dr. McKerahan's opinions are also inconsistent with the well-supported opinions of the state agency medical advisor, Dr. Meek (Exhibit 10F), who agreed with Dr. Schweller that [Plaintiff] is capable of performing a significant range of light work.  Dr. McKerahan's opinions are also inconsistent with the well-supported opinions of the consultative psychiatrist, Dr. Konia, that [Plaintiff] has only mild mental limitations (Exhibit 6F), and with the opinions of the state agency psychiatric advisor, Dr. Rivera-Miya (Exhibits 17F & 8F).  Both Dr. Konia and Dr. Rivera-Miya are board-certified psychiatrists.  Dr. Konia's report of examination is far more thorough than anything in the records of Dr. McKerahan, who is an osteopath without board-certification in psychiatry or any medical specialty.  Dr. McKerahan's opinions are also self-contradictory.  He says that [Plaintiff] would "never be able to work at sustained workstation" and in the very next sentence, that perhaps [Plaintiff] could, in fact, work in "a white collar position" after "vocational rehabilitation

7

(college) which will probably be his only option" (Exhibit 14F, p.3).   How might "college" improve the orthopedic impairments that supposedly make [Plaintiff] an invalid?  How could someone with all the mental dysfunction [Plaintiff] supposedly suffers even attend college, much less successfully?

Dr. McKerahan's opinions are also inconsistent with the daily activities that [Plaintiff] admits.  As he testified, he has a wife who works full-time, and two minor children.   In his statement of activities of daily life, he admits a wide range of daily activities, including driving, shopping, cleaning and doing most of the cooking for his family (Exhibit 4E).  While these activities do not prove that he is able to fell trees or run marathons, they do show that he is not nearly so debilitated as Dr. McKerahan opines.  In fact, some of [Dr. McKerahan's] opinions, such as his opinion that [Plaintiff] is incapable of any bending or reaching at all, are plainly ridiculous in view of [Plaintiff's] admitted daily activities.   Dr. McKerahan's functional assessments are conclusory and self-contradictory, and I give them little weight. (*See Batson v. Commissioner*, No. 02-35471, 2004 U.S. App. LEXIS 4460 (9th Cir. March 9, 2004)(Issued for publication).

(A.R. 23-24.)

Plaintiff contends that the ALJ "has simply failed to properly

8

consider the opinions of the treating physician Dr. McKerahan" and did not provide specific and legitimate reasons for rejecting his opinions of September 23, 2003. (Joint Stip. at 4-5.) In addition, Plaintiff contends that the ALJ failed to consider properly the evidence regarding Plaintiff's mental limitations found by other physicians, namely, the "moderate" difficulties in maintaining social functioning and concentration, persistence, and pace, as well as the limitations of performing only simple, repetitive tasks and having no interactions with the public, found by Dr. Rivera-Miya, a state agency physician. (Joint Stip. at 5.)

In his September 22, 2003 Physical Capacities Evaluation, Dr. McKerahan found that Plaintiff: can sit, stand, and walk for one hour during an eight-hour workday; can lift or carry up to ten pounds occasionally, but never more than 11 pounds; cannot use his hands for repetitive pushing and pulling; cannot use his feet for repetitive movements, such as pulling and pushing foot controls; cannot bend, squat, crawl, climb, or reach; is totally precluded from working around unprotected heights and moving machinery and from driving automotive equipment; and is moderately limited from being exposed to marked changes in temperature or humidity and to dust, fumes, and gases. (A.R. 268.) However, notwithstanding his finding that Plaintiff could perform work at less than the "light" exertional level with the above-stated limitations, Dr. McKerahan opined that:

> [Plaintiff] has both mental and physical disabilities that interfere with his work habits and tolerances.

9

> *I think he has life-long impairment, and will never be*
> *able to work at any sustained workstation.  Vocational rehab*
> *(college) probably will be his only option, perhaps a white*
> *collar position will be attainable some time in the future.*
> *Please consider for permanent and stationary disability.*

(A.R. 269-70; emphasis added.)  Dr. McKerahan also opined, in an apparently concurrent Mental Residual Functional Capacity Assessment, that Plaintiff has "moderate" limitations in six categories of sustained concentration and persistence, five categories of social interaction, and four categories of adaptation, and no "marked" mental limitations. (A.R. 271-72.)

As the ALJ observed, Dr. McKerahan's opinions regarding Plaintiff's physical and mental limitations are contradicted by the opinions of various examining and state agency physicians.  For instance, on September 13, 2002, Dr. Thomas Schweller, a board-certified neurologist, performed a neuro-orthopedic examination of Plaintiff at the request of the Commissioner, which included evaluating Plaintiff's ranges of motion and performing strength, sensory, and reflex testing.  (A.R. 210-12.) Based on his evaluation and test results, Dr. Schweller found that Plaintiff would:  "be able to sit, stand, or walk for six hours out of an eight-hour day"; "be able to lift 20 pounds occasionally and 10 pounds frequently, with occasional limits in bending, stooping, and squatting"; "have no kneeling or crawling limitations"; and "have no upper extremity fine or gross manipulation limitations."  (A.R. 212.) Similarly, in a September 27, 2002 Physical Residual Functional Capacity Assessment, Dr. John Meek, a state agency physician, found that

Plaintiff:  is limited to work at the "light" level; can stand, walk, and/or sit for approximately six hours in an eight-hour workday; is not limited with respect to pushing and/or pulling with his hands and/or feet; is precluded from balancing, kneeling, and crawling; is limited to climbing, balancing, stooping, and crouching occasionally; and should avoid concentrated exposure to extreme cold, wetness, fumes, odors, dusts, gases, poor ventilation, and hazards such a machinery heights. (A.R. 215-18.)  Dr. Meek set forth a detailed summary of the treating records and other medical evidence that he reviewed, including x-rays and MRIs.  (A.R. 221.)

With respect to Plaintiff's mental limitations, Dr. Konia, an examining psychiatrist, conducted an August 12, 2002 mental status examination of Plaintiff.  (A.R. 196-98.)  Dr. Konia found that Plaintiff "does not have a mental disorder that would significantly interfere with his ability to perform simple or complex work-tasks." (A.R. 197.)  In an August 15, 2002 Mental Residual Functional Capacity Assessment, Dr. Rivera-Miya, a state agency physician, found that Plaintiff is "not significantly limited" in all categories of mental functioning in work-like situations, except for "moderate" limitations in his ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public. (A.R. 206-07.)  In a concurrent Psychiatric Review Technique form, Dr. Rivera-Miya found that Plaintiff suffers from "affective," "anxiety-related," and "substance addition" disorders, and has "moderate" degrees of limitation in maintaining social functioning, concentration, persistence, and pace.  (A.R. 199-203.)

In assessing Plaintiff's residual functional capacity, the ALJ explained that: "I have given some weight to all functional capacity opinions of record, but controlling weight to none. My assessment of residual functional capacity is more restrictive than the functional limitations assessed by the consultative examiners and state agency physicians. I have given [Plaintiff] maximum <u>reasonable</u> benefit of the doubt in assessing residual functional capacity in this case." (A.R. 21; *emphasis in original*.) The ALJ found that Plaintiff has the residual functional capacity to perform work at the "light" level with the following limitations: "never climbing ladders, ropes or scaffolds except in an emergency; occasionally climbing ramps and stairs; occasionally balancing, stooping, crouching, kneeling, crawling, bending and squatting; avoiding concentrated exposure to dangerous moving machinery, electric shock, radiation and unprotected heights; avoiding concentrated exposure to chemicals, dust, fumes, gases, and extreme heat or humidity; and mentally limited to unskilled work with no close or frequent interpersonal contact with the public." (A.R. 30.)

Thus, in determining Plaintiff's *physical* limitations, the ALJ rejected many of Dr. McKerahan's findings regarding Plaintiff's physical limitations, namely, that Plaintiff: cannot perform work at the "light" level; cannot use his hands and feet for repetitive movements, such as pushing and pulling; can only stand, sit, and walk for one hour during an eight-hour workday; and is precluded from bending, squatting, crawling, climbing, or reaching.[2] However, the ALJ's findings regarding

---

[2]   However, to the extent that the ALJ found that Plaintiff is precluded from "concentrated exposure to dangerous moving machinery, electric shock, radiation and unprotected heights" and "chemicals, dust,

Plaintiff's physical limitations are consistent with other medical evidence in the record, such as:  the findings of Dr. Schweller and Dr. Meek that Plaintiff can perform work at the "light" level; Dr. Meek's finding that Plaintiff has no limitations on pushing and pulling with his hands or feet; Dr. Schweller's finding that Plaintiff has no limitations on fine manipulation; Dr. Schweller's finding that Plaintiff is limited to bending, stooping, and squatting occasionally and has no kneeling or crawling limitations; and Dr. Meek's finding that Plaintiff is limited to climbing, balancing, stooping, and crouching occasionally.

When they are properly supported, the opinions of physicians other than treating physicians, such as examining physicians and non-examining medical experts, may constitute substantial evidence upon which an ALJ may rely.  *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan Commissioner of the Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); Andrews, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then

_____

fumes, gases, and extreme heat or humidity" (A.R. 30), the ALJ's physical residual functional capacity finding is consistent with Dr. McKerahan's remaining physical non-exertional limitations, *viz.*, preclusions from working around unprotected heights and moving machinery and driving automotive equipment, and moderate limitations from exposure to marked changes in temperature, humidity, dust, fumes, and gases.

1  solely the province of the ALJ to resolve the conflict."). The Court
2  concludes that this is an instance in which the ALJ properly and
3  appropriately resolved this conflict by rejecting the opinion of Dr.
4  McKerahan, notwithstanding that he is a treating physician, and relying
5  on other, substantial medical evidence of record.

6

7       As a threshold matter, the Court notes that the ALJ, after
8  discussing both the standards to be applied in reviewing medical source
9  evidence and the medical evidence of record, then discussed the weight
10 he had accorded the medical sources in reaching his residual functional
11 capacity findings. As noted above, while the ALJ gave "some" weight to
12 all functional capacity assessments in the record, he gave none of them
13 "controlling" weight. As discussed earlier, the ALJ accorded Dr.
14 McKerahan's functional assessments "little" weight. (A.R. 24.) The ALJ
15 gave "great" weight to Dr. Schweller's physical functional assessment.
16 (A.R. 22.) While noting that he "accept[ed]" the opinion of Dr.
17 Robertus Kounang, a physician who examined Plaintiff in connection with
18 his state disability claim, the ALJ noted the limitations of that
19 opinion, *i.e.,* it did not address Plaintiff's ability to do other work,
20 and did not "purport to apply to any period of 12 continuous months."
21 (*Id.*) The ALJ gave "moderate" weight to the opinions of the state
22 agency medical consultants "as opinions of non-examining medical
23 sources." (A.R. 24.)

24

25      The ALJ correctly observed that he was not required to accept Dr.
26 McKerahan's ultimate conclusions regarding Plaintiff's disability as set
27 forth in periodic state disability forms, *i.e.,* that Plaintiff was
28

precluded from working during various monthly periods,[3] and as set forth in Dr. McKerahan's September 22, 2003 report, *i.e.,* that Plaintiff "has life-long impairment, and will never be able to work at any sustained workstation."  As the ALJ correctly stated, a finding of "disability" for California state law purposes does not, *ipso facto*, compel a finding of disabled status under the Social Security Act.  (A.R. 22.)  Indeed, as the ALJ noted (A.R. 16), Dr. Kounang, the state disability examining physician, found that, despite Plaintiff's chronic low back pain and decreased range of motion, Plaintiff would be able to return to his prior employment as a maintenance manager on June 15, 2002, a month following Dr. Kounang's examination.  (A.R. 194-95.)[4]  Moreover, the question of "disability" under the Social Security Act is for the ALJ to determine, and he is not bound by a treating physician's opinion on this ultimate issue.  *See, e.g.,* <u>Batson</u>, 359 F.3d at 1194-95 (quoting <u>Tonapetyan</u>, *supra*); <u>Morgan</u>, 169 F.3d at 600.

Most importantly, the ALJ provided a thorough description of Dr.

---

[3]    *See, e.g.,* A.R. 222 (November 2, 2002 report that Plaintiff was able to perform his regular and customary work starting January 2, 2003, but recommending he be considered for permanent disability); A.R. 224 (August 12, 2002 report that Plaintiff would be able to perform his regular and customary work on October 12, 2002, but noting possible permanent disability); A.R.  227 (May 30, 2002 report that Plaintiff could return to work on August 1, 2002); A.R. 231 (February 18, 2002 report that Plaintiff would be able to return to work on April 1, 2002); A.R. 235 (November 27, 2001 report that Plaintiff would be able to return to work on February 1, 2002).

[4]    In contrast, the ALJ "accept[ed]" the conclusion that Plaintiff "is unable to return to his work as a maintenance supervisor at Warner Springs Ranch," (A.R. 23.)  As the ALJ aptly observed, however, Plaintiff's inability to perform one of his past jobs does not mean that Plaintiff is disabled under the Social Security Act, if he is able to perform substantial gainful activity in other jobs existing in significant numbers in the national economy.  (*Id.*)

McKerahan's records and a detailed basis for the rejection of them, which was supported by substantial evidence of record, as quoted above. The ALJ's stated reasons for rejecting the treating physician's opinion were specific and legitimate.  The Court concludes that, accordingly, the ALJ met his burden and properly rejected Dr. McKerahan's opinion. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)("The ALJ can meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

As the ALJ explained, Dr. McKerahan's opinions are self-contradictory and inconsistent with Plaintiff's own description of his daily activities.  For instance, Dr. McKerahan's opinion that Plaintiff will "never" be able to work at any "sustained workstation" due to his "life-long impairment" contradicts his immediately-following opinion that Plaintiff, by seeking "vocational rehab (college)," "perhaps will" be able to perform "white collar" work.  As the ALJ pointed out, it is unclear how additional education could somehow improve and/or override Plaintiff's assertedly wholly disabling orthopedic impairments or how he could successfully attend college in light of the assertedly disabling mental impairments found by Dr. McKerahan.

In addition, as the ALJ pointed out, Dr. McKerahan's opinion that Plaintiff is incapable of performing any postural activities (e.g., reaching, bending, stooping, and repetitive movements with the hands and feet) is inconsistent with Plaintiff's own stated daily activities, which include driving, shopping, cleaning, and doing most of the cooking

16

for his family.[5]  (*See* A.R. 113-14.)  As the ALJ observed, in view of these admitted daily activities, Dr. McKerhan's attribution of such an extreme inability to move on Plaintiff's part is "plainly ridiculous on the record of this case" (A.R. 23, 24).  *See* <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001)(ALJ did not err in finding treating doctor's findings (*e.g.,* of an inability to engage in any bending, stooping, crouching, crawling, kneeling, climbing, and balancing) to be "so extreme as to be implausible," when record did not reveal the basis for such restrictions and the claimant did not claim to have such extreme limitations).

These inconsistencies provide specific and legitimate reason for rejecting Dr. McKerahan's opinion.  *See* <u>Rollins</u>, 261 F.3d at 856 (ALJ provided specific and legitimate reasons for rejecting a treating doctor's opinion, as that opinion was inconsistent with the doctor's examination notes as well as internally inconsistent, not supported by any findings made by the treating doctor or any other doctor, and inconsistent with the claimant's own description of her limitations); <u>Saelee</u>, 94 F.3d at 522 (ALJ properly disregarded treating doctor's report where it varied from his treatment notes); <u>Young v. Heckler</u>, 803 F.2d 963, 968 (9th Cir. 1986)(treating doctor's conclusory opinion that claimant was disabled was properly rejected by the ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).  *See also* 20 C.F.R § 416.927(d)(4)(medical opinion which is

---

[5]     Plaintiff also testified that he spends time fishing, gardening, drawing, and working on the computer.  (A.R. 112-13.)

The credibility of Plaintiff's claimed limitations is further discussed in Section B.

consistent with the record is given more weight).

In addition, the ALJ appropriately concluded that, in view of the conflicting medical evidence, Dr. Schweller's opinion was entitled to more weight than that of Dr. McKerahan. As the ALJ noted, Dr. Schweller is a Board-certified neurologist, whose report regarding Plaintiff's physical limitations was more thorough and supported by objective clinical findings than that of Dr. McKerahan, an osteopath who is not Board-certified. *See* Andrews, 53 F.3d at 1042 (ALJ properly relied on opinion of examining physician, who was a specialist in one of the areas of claimed impairment, over that of treating physician, who was not); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief and unsupported by clinical findings); *see also* 20 C.F.R. § 404.1527(d)(5)(unless a treating source's opinion is given controlling weight, the Commissioner generally gives "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinions of a source who is not a specialist").

As the ALJ further observed, Dr. McKerahan's opinion is inconsistent with that of Dr. Meeks, the state agency physician, whose opinion was "well-supported" by his discussion of the medical evidence of record, including Dr. Schweller's opinion. The report of this nonexamining source properly constituted substantial evidence and supported rejecting Dr. McKerahan's opinion, because it was consistent with and supported by other evidence of record. *See* Tonapetyan, 242 F.3d at 1149 (nonexamining doctor's opinion constituted substantial evidence favoring rejection of treating doctor's opinion, when the

18

former rested his opinion on the objective findings of an examining physician); Andrews, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence"); Magallanes, 881 F.2d at 752-53.

In this situation, where a conflict exists between the assessment of an examining physician based on objective clinical findings and the assessment of a treating physician, the examining physician's opinion may itself constitute substantial evidence warranting rejection of the treating doctor's opinion, and it is the sole province of the ALJ to resolve the conflict. Andrews, 53 F.3d at 1041. In this case, the ALJ appropriately resolved the conflict in favor of Dr. Schweller's opinion. See Tonapetyan, 242 F.3d at 1149 (conflicting opinion of an examining doctor, which rested on his own examination of the claimant, provided the requisite specific and legitimate reason for rejecting the treating physician's opinion and constituted substantial evidence).

Similarly, the ALJ properly observed that Dr. McKerahan's opinion regarding Plaintiff's assertedly disabling mental limitations is inadequately explained and unsupported by clear findings, and far less comprehensive than the opinion of examining physician Dr. Konia, a Board-certified psychiatrist, which Dr. McKerahan is not. Dr. McKerahan's opinion that Plaintiff is moderately limited in all mental functioning categories conflicts with that of Dr. Konia -- that Plaintiff has only mild mental limitations -- and that of state agency

and Board-certified psychiatrist Dr. Rivera-Miya -- that Plaintiff has primarily mild limitations.  For the same reasons set forth above, the ALJ was entitled to resolve this conflict in favor of the examining physician's opinion.

Plaintiff's remaining contention -- that the ALJ failed to take into account the opinions of Drs. Konia and Rivera-Miya with respect to his mental limitations, and to state the weight he accorded them -- is unavailing.  The ALJ expressly noted that he had:  given "some weight to all functional capacity opinions of record, but controlling weight to none"; assessed a residual functional capacity more restrictive than that assessed by the consultative examiners and state agency physicians; and had given Dr. Rivera-Miya's opinion "moderate" weight.  (A.R. 21, 24.)  The ALJ's mental residual functional capacity finding is, in fact, more limited than Dr. Konia's finding that Plaintiff can perform "perform simple or complex work-tasks."  (Compare A.R. 21 and 30 with A.R. 197.)  With respect to Dr. Rivera-Miya, Plaintiff mistakenly relies on the findings set forth in her Psychiatric Review Technique Assessment (A.R. 202), rather than on the psychiatrist's findings set forth in her Mental Residual Functional Capacity Assessment (A.R. 206-07).[6]  Dr.

---

[6]    The Psychiatric Review Technique form describes a claimant's mental deficits in a general manner for evaluation at steps 2 and 3, namely, to assess whether a claimant has a "severe" impairment and, if so, that impairment meets the requirements of a Listing.  In contrast, the Mental Residual Functional Capacity Assessment form is used to assess what mental limitations a claimant will experience in the workplace.  See Social Security Ruling 96-8p, 1996 WL 374184, *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria [of the Psychiatric Review Technique Form ("PRTF")] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by

Rivera-Miya's findings set forth in the latter assessment -- namely, that Plaintiff is moderately limited in the ability to understand, remember, and carry out detailed instructions and the ability to interact appropriately with the general public -- are subsumed within the ALJ's mental residual functional capacity finding that Plaintiff is mentally limited to unskilled work with no close or frequent interpersonal contact with the public. *See* <u>Macri v. Chater</u>, 93 F.3d 540, 544 (9th Cir. 1996)(ALJ did not improperly reject treating doctor's opinion, because the ALJ had discussed the opinion and it was consistent with the ALJ's determination that the claimant was capable of performing a "wide range of light work"); 20 C.F.R. § 404.1568(a)("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

For all of the foregoing reasons, the Court concludes that the ALJ did not err in his treatment of any of the physician opinions in question.

**B.   <u>The ALJ Properly Assessed Plaintiff's Credibility</u>.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of his or her pain may not be discredited based solely on a

---

itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

lack of objective medical evidence to corroborate the allegations. _Tonapetyan_, 242 F.3d at 1147-48; _Bunnell v. Sullivan_, 947 F.2d 341, 345 (9th Cir. 1991); _Fair v. Bowen_, 885 F.2d 597, 601 (9th Cir. 1985).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, _Gonzalez v. Sullivan_, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

_Light v. Social Security Admin._, 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  _Bunnell_, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. _Dodrill v. Shalala_, 12 F.3d 915, 918 (9th Cir. 1993); _Light_, 119 F.3d at 792.  In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider:  "(1) ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.") When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain or symptom testimony is not credible and what evidence suggests that the complaints are not credible. *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688 (9th Cir. 1979).

Plaintiff testified that he cannot work, because "I just hurt." (A.R. 297, 299.)  He testified that he has back pain, often combined with pain in his neck, buttocks, and legs, one to four times a week.  He has left leg pain 99% of the time.  (A.R. 298.)  Plaintiff further

testified that he could not stay in a job for longer than an hour, and he would have to leave due to anxiety attacks, which he experiences several times every day and typically last 20 minutes to one hour if he takes his medication.  (A.R. 315-16.)

In rejecting Plaintiff's credibility, the ALJ explained:

[Plaintiff] is not truthful about his history of alcohol abuse.  For example, he denied alcohol abuse to Dr. Moody in September 2001 (Exhibit 3F, p.2).  He told the consultative psychiatrist only that he had drunk alcohol "as a teenager" (Exhibit 6F, p.2).  He denied any history of alcohol abuse to the consultative neurologist, Dr. Schweller (Exhibit 9F, p. 2).  These denials are plainly untrue, and reflect poorly on his credibility.

[Plaintiff] was, in fact, medically diagnosed with alcohol abuse as long ago as 1997 (Exhibit 2F, p.5), and his drinking was a major focus of treatment by Dr. Tanaka (Exhibit 2F).  His record is also filled with his own admissions of alcohol abuse, including his admission of drinking 8-to-10 drinks per day (Exhibit 2F, p. 9), and continuing consumption of 2-to-3 beers per day as late as January 2002, despite repeated medical advice to discontinue consumption of alcohol beginning as long ago as December 1996 (Exhibit 2F, p.12).  In January 2002, Dr. McKerahan again advised him to stop drinking (Exhibit 11F, p. 11), but he did not do so.  At [the] hearing he admitted that he continues to drink, and that he mixes

24

alcohol with medication against medical advice.  He admitted
having drunk four-to-five "shots" of Tequila a few days before
the hearing, but insisted that this is not alcohol abuse.  He
also testified that he did not consider his admitted history
of drinking 18 beers per day to be alcohol abuse either.
Clearly, [Plaintiff] is not truthful regarding his long and
continuing history of alcohol abuse.

As the Ninth Circuit has pointed out, "if a claimant ...
is found to have been less than candid in other aspects of his
testimony, that may be properly taken into account in
determining whether or not his claim of disabling pain should
be believed." *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir.
1989).  I am permitted to draw the inference that since the
claimant is not truthful about his drinking, he is not
truthful about his claim of disabling pain either.  I can draw
that inference, and I do.

The claimant's allegation of multiple impairments that
are not supported in the records also reflect poorly on his
credibility.

. . . .

[Plaintiff's] allegations of disability due to his mental
condition are undermined by the opinion of H. Konia, M.D.[,]
board-certified in psychiatry, who evaluated him on August
12k, 2002 and opined that [Plaintiff's] mental disorder would

not significantly interfere with his ability to perform even complex tasks (Exhibit 6F/2).

[Plaintiff's] credibility concerning his allegations of disab[ling] functional limitations are called into question by his activities of daily living (Exhibits 4E/1-4; 5E/2-4; and 6F/2).  He is able to do light household chores, walk, and shop for groceries.  He is apparently passionate about cooking and cooks "a lot" (Exhibits 4E/2; and 5E/2).  He can independently manage his own transportation and uses a car to get around to do his errands, and even to go fishing.

[Plaintiff's] allegations of his thoughts being in a "mental fog" (Exhibit 1E/2) is inconsistent with his pastimes of surfing the internet and reading.  His sister opines that his memory is "awesome" (Exhibit 5E/2).

There is no evidence of appetite impairment due to pain.

[Plaintiff's] course of treatment has been conservative.

The record does not show that [Plaintiff] requires any special accommodations (e.g., special breaks or positions) to relieve his pain or other symptoms.

Other than Dr. McKerahan, none of [Plaintiff's] physicians expressed an opinion of disability precluding [Plaintiff] from full-time light exertion for at least twelve

26

months since his alleged disability onset date.

Even though [Plaintiff] alleges disabling fatigue and weakness, he does not exhibit any significant atrophy, loss of strength, or difficulty moving, indicative of severe and disabling pain.

The record does not indicate that [Plaintiff's] medications are ineffective or that they cause him debilitating side effects.

. . . .

As he testified, he has a wife who works full-time, and two minor children.  In his statement of activities of daily life, he admits a wide range of daily activities, including driving, shopping, cleaning and doing most of the cooking for his family (Exhibit 45E).  While these activities do not prove that he is able to fell trees or run marathons, they do show that he is not nearly so debilitated as he claims.

Finally, [Plaintiff's] demeanor as a witness at hearing was poor.  I conclude that [Plaintiff's] allegations of debilitating pain and disabling functional limitations are not fully credible.  Neither the objective medical evidence nor [Plaintiff's] subjective allegations warrants any more restrictive functional limitations than those which I have found in this case.

(A.R. 24-26.)


Plaintiff contends that the ALJ erred in rendering his credibility finding.  (Joint Stip. at 10-12.)  Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's claimed limitations, and the ALJ failed to apply the factors mandated by Social Security Ruling 96-7p.[7]  Plaintiff further argues that the ALJ mischaracterized and improperly ignored statements made by his wife.[8]


As the lengthy quotation above shows, the ALJ stated many bases for his adverse credibility finding.  The ALJ first provided a detailed and thorough analysis of Plaintiff's conflicting and less than truthful statements regarding his alcohol abuse.[9]  This was a proper ground, and

---

[7]   To the extent that Plaintiff contends the ALJ committed reversible error by failing to apply each of these factors, Plaintiff's argument is without merit.  While Social Security Ruling 96-7p sets forth a number of factors for an ALJ to consider in assessing a claimant's credibility, it does not require an ALJ to discuss and analyze each and every one of those factors specifically.  There is no basis for finding that the failure to do so is reversible error.

[8]   Although Plaintiff asserts conclusorily that the ALJ mischaracterized Plaintiff's testimony about his daily activities, Plaintiff does not identify any such purported mischaracterizations.

[9]   *See further*:  A.R. 308 (Plaintiff's testimony that, while he was working at a hardware store in 1996, he drank "[a] 12 pack, 18 [beers] maybe a night," "heavy, heavy every night," and that "[m]ost of the time I'd drink six, eight beers"); A.R. 308-09 (Plaintiff's testimony that he drank two martinis the night before the hearing, and two days before that drank "[p]robably four, five shots" of tequila); A.R. 309-10 (Plaintiff's testimony that Dr. McKerahan advised him against drinking while taking his medication, but that he did so anyway, because "it helps"); A.R. 311 (Plaintiff's assertion that his stated "heavy, heavy every night" use of alcohol while he was working at the hardware store did not constitute alcohol abuse and inconsistent testimony that "that wasn't every day").

*See also, e.g.*, A.R. 154 (Dr. Jane Tanaka's September 8, 1999 report noting that "[Plaintiff] apparently [is] in strong denial of use

28

a clear and convincing reason, for finding Plaintiff lacking in credibility. The ALJ, in reliance on <u>Fair</u>, *supra*, did not err in drawing the inference that Plaintiff's lack of truthfulness about his drinking indicated that he was not truthful in other aspects of his testimony as well. *See, e.g.,* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002)(claimant's inconsistent statements about her alcohol and substance abuse supported "the ALJ's negative conclusions about [her] veracity").

The ALJ also appropriately cited Plaintiff's admitted daily activities of cooking for his family, grocery shopping, light household work, walking, grocery shopping, driving, and occasional fishing as reflecting poorly on the credibility of his claimed limitations.[10] *See* <u>Smolen</u>, 80 F.3d at 1234 (explaining that an ALJ may consider a claimant's daily activities in determining the credibility of his testimony regarding the severity of his symptoms). While, as the ALJ explained, these activities do not show that Plaintiff can "fell trees" or "run marathons," such daily activities suggest that Plaintiff is not as disabled as he contends and are inconsistent with the extreme physical limitations suggested by Dr. McKerahan, such as Plaintiff's

---

of ETOH consumption of 5-8 beers/night"); A.R. 156 (Dr. Tanaka's August 5, 1997 report noting "ETOH abuse"); A.R. 163 (Dr. Tanaka's December 27, 1996 notes recommending that Plaintiff decrease "ETOH" to "<u>max 2 drinks</u>" (emphasis in original); A.R. 232 (Dr. McKerahan's January 28, 2002 notes showing that Plaintiff "still smoking [and consuming] 2-3 beers per day" and recommending that Plaintiff "stop").

[10]    In his June 11, 2002 Daily Activities Questionnaire, Plaintiff stated that:  he does "a lot of cooking," cooks "one meal most days," and cooks "all kinds" of food, as cooking is "a passion of mine!"; he enjoys fishing and gardening; and he grocery shops "once or twice a month."  (A.R. 113.)

asserted incapability of any activities involving bending, stooping, climbing, reaching, and pushing and pulling of arm and foot controls, or sitting for more than an hour, as noted above.  It is appropriate for an ALJ to look upon a claimant's daily activities as a basis for rejecting claimed pain and symptoms, even when such activities are not necessarily extensive, if such daily activities go beyond what would be expected of an individual who claims the same extent of mental and physical limitations as Plaintiff.  *See* Light, 119 F.3d at 793 (ALJ may disbelieve a claimant's alleged limitations where the claimant's testimony regarding his daily activities and the nature, effect, or severity of his symptoms are inconsistent); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993)(the ALJ properly rejected the claimant's allegation that back pain was disabling, when claimant performed housecleaning and gardening, attended school, and only occasionally took pain medication); Fair, 885 F.2d at 603 ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

The ALJ's conclusion that Plaintiff's assertion that his anxiety attacks prevent him from working was not credible, based on Dr. Konia's report, also was clear and convincing.  Dr. Konia examined Plaintiff and specifically noted Plaintiff's complaints of anxiety attacks, for which he took an anti-anxiety medication, but concluded that, nonetheless, Plaintiff did not have a mental disorder that would significantly interfere with his ability to perform even complex work tasks.  (A.R. 196-97.)  Thus, the objective medical evidence not only failed to

support Plaintiff's testimony as to his claimed mental limitations, but also specifically contradicted it.  Medical observations bearing on the claimed symptoms are a valid factor for the Commissioner to use in making a credibility assessment.  *See, e.g.,* <u>Rollins</u>, 261 F.3d at 857 (medical evidence that contradicted claimant's assertion of severity of her symptoms properly considered as basis for finding claimant not credible); <u>Morgan</u>, 169 F.3d at 599 (upholding rejection of plaintiff's claimed symptoms when medical records addressed plaintiff's claim and found symptoms to be lacking); <u>Smolen</u>, 80 F.3d at 1284 (observations from physicians regarding the symptoms are a proper basis for assessing credibility); <u>Copeland v. Bowen</u>, 861 F.2d 536, 540-41 (9th Cir. 1988)(ALJ's rejection of claimant's credibility upheld where claimant alleged a limitation "disparate from that observed by the consultative examiner").

Finally, the ALJ's observation that, although Plaintiff asserts debilitating pain, his treatment has been conservative and he does not take the strong analgesics normally prescribed for severe pain also supports the ALJ's adverse credibility finding.  Plaintiff's pain medications consist of Motrin (Ibuprofen) and Darvocet.[11]  (A.R. 99, 304.)  As the ALJ concluded, it was permissible to infer that these medications are efficacious and well-tolerated, given that the record provides no indication that they are not.  The ALJ's reliance on the minimal medical treatment Plaintiff has received with respect to his

---

[11]   Motrin is a nonsteroidal, anti-inflammatory drug, which is available over-the-counter, and is used for temporary relief of "minor aches and pains."  Darvocet is a "mild" analgesic "indicated for the relief of mild to moderate pain."  PHYSICIAN'S DESK REFERENCE, 2005 WL 1157918, 1158655 (2005).

physical impairments, as well as the type of medication he takes, is a specific and legitimate basis for an adverse credibility determination. *See* SSR 96-7p (type and dosage of medication taken may be considered in assessing credibility of pain testimony); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1999)(ALJ's partial rejection of pain testimony properly supported by, *inter alia*, the claimant's assertion that a nonprescription medicine aided her intermittent pain, and that treating doctors found it unnecessary to treat a found abnormality); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995)(an ALJ may consider the conservative nature of treatment to suggest a lower level of pain and functional limitation than that alleged by claimant); and <u>Fair</u>, 885 F.2d at 604 (claim of disabling pain may be discredited by evidence of minimal medical treatment).

In sum, the Court finds that the ALJ's reasons for rendering an adverse credibility finding as to Plaintiff were clear and convincing. As the ALJ applied the proper standards in his analysis, and as "[c]redibility determinations are the province of the ALJ" (<u>Andrews</u>, 53 F.3d at 1043), there is no basis for finding that reversible error occurred.

Plaintiff's arguments regarding the ALJ's failure to consider properly the statements made by Linda O'Neal, Plaintiff's wife, are similarly unavailing. In her June 13, 2002 Daily Activities Questionnaire, Mrs. O'Neal described Plaintiff's activities around the home. She stated that Plaintiff "sits in a recliner" and in "various chairs" throughout the day in-between such activities as watering the yard, surfing the Internet and checking e-mail, eating meals, drawing,

and occasional naps.   (A.R. 118.)   She also noted that Plaintiff: "take[s] care of all personal needs"; "generally" cooks his own meals, which [include] a variety of foods, such as "meat, chicken, vegetables, potatoes or rice" and "[possibly] salad," although Plaintiff "sometimes [receives] general assistance [with] either [preparing] part of a meal or [washing] dishes"; shops for groceries "twice [per] month" although she "generally goes along"; performs household chores, such as "dishes, basic pick-up, and straightening" and "basic fix-it things"; often goes outside and walks around or sits on the porch; and "enjoys fishing" but "has not spent much time lately" doing so.   (A.R. 119-20.)   Although the statements of Mrs. O'Neal (whom Plaintiff testified works full-time (A.R. 296)) suggest that Plaintiff receives some general assistance with household chores, her statements are nonetheless cumulative of Plaintiff's own statements that he cooks, performs light housework, grocery shops, and sometimes fishes -- all activities which the ALJ noted, and accepted as true, in his lengthy credibility finding.   In short, even if the ALJ had expressly noted and addressed Mrs. O'Neal's statements about Plaintiff's daily activities, it would not have made any difference to the ALJ's analysis or conclusions.

Plaintiff correctly notes that the ALJ's misstated the record when he observed that Plaintiff's "sister" stated that Plaintiff's memory was "awesome" when, in fact, the cited reference was Mrs. O'Neal's statement that "he remembers awesome things" from reading on the Internet.   (A.R. 121.)   However, the ALJ's erroneous characterization and attribution of this statement does not affect the overall substance of the Mrs. O'Neal's statements, which are essentially cumulative of Plaintiff's own statements.

1    As the ALJ's residual functional capacity assessment and
2  credibility findings are proper, his failure to address the wife's Daily
3  Activities Questionnaire statements and his mischaracterization of one
4  sentence therein, even if error, was harmless and does not warrant
5  reversal. *See, e.g.,* <u>Batson</u>, 359 F.3d at 1197 (ALJ error which does not
6  negate the validity of the ALJ's ultimate conclusion is harmless and,
7  therefore, does not warrant reversal; even if ALJ committed some error
8  in characterizing the claimant's statements regarding his limitations,
9  in light of the reasons given by the ALJ for finding the claimant not
10 credible and for the residual functional capacity found, and the
11 objective medical evidence on which he relied, the error was harmless);
12 <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990)(harmless error
13 rule applies in Social Security cases).

14

15    The Court concludes that there was no reversible error in the ALJ's
16 credibility finding.

17

18                              **CONCLUSION**

19

20    For all of the foregoing reasons, the Court finds that neither
21 reversal of the Commissioner's decision nor remand is warranted.
22 Accordingly, IT IS ORDERED that the Commissioner's decision denying
23 benefits is AFFIRMED, and that Judgment shall be entered affirming the
24 decision of the Commissioner.

25 ///

26 ///

27 ///

28 ///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 13, 2006

                                    /s/
                          MARGARET A. NAGLE
                 UNITED STATES MAGISTRATE JUDGE

35